Ladies and gentlemen, please rise. This court is now in session. Let it be said, that the clerk will now call the next case. 3-5-0-2-6-2, People of the State of Illinois, and that will go Stephanie Raymond v. Harry O'Neal, appealed by Brian Josias. Good afternoon. Brian Josias, Assistant Appellate Defender, with the Office of the State Appellate Defender, on behalf of the Defendant Appellant, Harry O'Neal. May it please the Court and Counsel. Mr. O'Neal's conviction for aggravated battery of Deputy James Riley should be reversed. The only evidence that O'Neal hit Riley came from Riley himself. But Riley lied in the trial court about O'Neal's reactions after Riley shattered the window of O'Neal's car and began beating him with a flashlight, causing O'Neal injuries that required hospital treatment. The court below made a mistake in relying on Riley's testimony because Riley was not credible. The evidence at trial showed that Mr. O'Neal was driving in a car to meet a contractor when Officer Robert Beike performed a traffic stop. Beike's car was equipped with a dash camera, and he was wearing a body camera. After O'Neal had complied with Beike's requests, given him his identification, and Beike went back to his vehicle, Deputy Riley arrived on the scene and approached O'Neal's vehicle. There are differing accounts of how things progressed, but one thing is certain. After one minute, Riley escalated the situation dramatically by suddenly reaching inside of O'Neal's vehicle. A brief altercation ensued. The altercation lasted less than 30 seconds. Riley was physically in O'Neal's vehicle for approximately 10 of those seconds. Riley claimed at trial that during those 10 seconds, O'Neal used his right hand and attempted to pull Riley's hand off the gear shift, revved the engine of his vehicle multiple times, then Riley reached back with his flashlight in his right hand, broke the window of O'Neal's vehicle, began hitting O'Neal with the flashlight, then O'Neal freed his hand from the gear shift, then he hit Riley three to five times with a closed fist before O'Neal opened the door of his vehicle and pushed his way out. Now, Mr. O'Neal says that Riley was unhappy with how far O'Neal had his window rolled down, and suddenly and without warning shattered the window of his vehicle and began beating him with a flashlight. O'Neal attempted to evade Riley's blows and flailed around while trying to shield himself. The individuals then tumbled from the car. O'Neal broke free from Riley's grasp and fled the scene. Riley's credibility, as I stated earlier, is critical. Without his credibility, excuse me, without his testimony, you cannot have an aggravated battery. He is the only witness who says that O'Neal struck him, but his testimony was riddled with fabrications. First, he claimed that when he arrived on the scene, O'Neal's speech was slurred, his eyes were glossy, but we know that is not true. The record shows that. How do we know that? The other officer on the scene, on the record, would not confirm that, did not agree with that. O'Neal denied it, and perhaps most critically in this court, we have the benefit of the video evidence that plainly contradicts those statements from Deputy Riley. Second, he claimed that the steering column was damaged and that the radio in the vehicle was missing. But again, we know that that is not true. And how do we know it's not true? Again, Officer Beike does not back him up. Again, O'Neal was unimpeached when he demonstrably proved that that was false. And, perhaps most critically for purposes of this court, the video evidence shows that to be a lie. The radio and the steering column were not damaged. Third, Deputy Riley claimed that after O'Neal left the vehicle, he stood over him and punched him. O'Neal denied that, and again, the video clearly shows that that never happened. Moreover, Riley, despite claiming to be assaulted by Mr. O'Neal, was uninjured. So what about the critical claim that O'Neal struck Riley three to five times with a closed fist? We know that's not true either. And how do we know that? Well, again, Officer Beike doesn't or couldn't back him up. He said he couldn't be sure of whether or not Mr. O'Neal hit him with a closed fist. Again, Mr. O'Neal denies it. And Riley's own timeline of events and the video make it nearly impossible for that to have taken place. Again, as I mentioned earlier, the video shows the entire altercation inside the car lasted ten seconds at most. And as I discussed, Riley says that during that time, he grabbed the gearshift. He struggled with O'Neal over the gearshift. O'Neal revved the engine. Riley broke the window. O'Neal removed his hand from the gearshift. O'Neal struck him three to five times. And then the door opened and they tumbled out of the car. It's just not possible for all of that to have taken place that quickly. Moreover, Riley had a motive to fabricate. This video evidence showed his egregious and unnecessary conduct that endangered himself, O'Neal, and his fellow officers. And so he created a narrative to justify his conduct and to excuse it. Now, the trial court acquitted O'Neal of aggravated battery on Officer Feige but convicted as to Riley. Why? The court found that Riley was consistent and that these lies that he told were red herrings. It's our position that the court findings were incorrect. The court misunderstood O'Neal's testimony in finding him not credible and incorrectly evaluated Riley's credibility and the extent to which the video completely undermined that credibility and vividly demonstrated Riley's motive to embellish and distort those facts. State argues here they relied primarily on the deferential standard of review. And it's true. It's only an unusual case where the proof is so improbable or unsatisfactory as to be insufficient to prove the case beyond a reasonable doubt. It's our position this is that case. And it's because of how incredible Riley's testimony is and because we have the benefit of the video to show that. And it shows that the trial court simply judged the facts incorrectly. Even if one gives Riley's testimony some credit, the proof is still insufficient to prove the required elements of conscious, practical certainty that Mr. O'Neal's conduct would cause physical contact of an insulting and provoking nature with Deputy Riley. As the state itself argues in their brief, intent can be inferred from the surrounding circumstances, the offender's words, the weapon used, and the force of the blow. That's from people v. Conley. Now here, three of those four factors strongly suggest that O'Neal lacked the requisite intent to make physical contact of an insulting or provoking nature. And the other is neutral at best. Now looking at the surrounding circumstances, by his own admission, it was Riley who escalated the situation. He was the one who intruded into the vehicle in a sudden and surprising fashion. Moreover, the brevity of the exchange was fleeting and brief and not sustained and repeated, such as to demonstrate an intent by my client to do harm or, excuse me, to make contact with Officer Deputy Riley. The offender's words. Here there were no threats or fighting words. There was nothing to indicate circumstantially that my client had the intent to make contact with Deputy Riley. The weapons used, the third factor. No weapons were used here. My client did not go out of his way to arm himself and then thereby demonstrate his intent to commit a battery. The force of the blow, again, this is another critical factor in terms of determining intent in any contact that was made. It's undisputed there were no injuries to Riley. On the contrary, Mr. O'Neal had received hospital treatment for the injuries he received as a result of Riley's contact with him. If, as Riley claims, Mr. O'Neal struck him repeatedly, O'Neal, despite being a very large man, used a very small amount of force, again, that belies an intent to commit a battery. Again, if your honors have no further questions, we'd rely on the arguments we presented in our briefs, which demonstrate that Riley's testimony was utterly incredible and, as a result, the state's evidence was insufficient to prove O'Neal guilty beyond a reasonable doubt. Thank you. Thank you. Ms. Raymond. May it please the court, your honors, counsel, my name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Defendant was proved guilty of activating a battery beyond a reasonable doubt in that defendant knowingly made physical contact of an insulting or provoking nature with James Riley, knowing James Riley to be a peace officer engaged in his official duties. The standard in this case is viewing the evidence in the light most favorable to the people. Any rational try or effect could have found defendant guilty beyond a reasonable doubt. Officer Beike pulled defendant over after he noticed defendant's rear registration light was not illuminated. He immediately called for a car after he heard defendant yelling profanities out the window and not stopping his car. When defendant finally did stop his car, Officer Beike then went to defendant's passenger side because the car was still not in park and asked defendant to park the car, roll down his window, and give him his information. Defendant did not comply with any of these requests and instead commanded Officer Beike to go in front of the car and come on the other side and get his information. Officer Beike went around the back of defendant's vehicle to his driver's side where defendant cracked his window and gave him his information. Officer Beike then went back to his vehicle, his patrol car, and ran defendant's information. At this point is when Deputy Riley arrived on the scene and asked if he could speak with defendant. Deputy Riley then goes to the driver's side of defendant's car, which was still not in park, and asked defendant multiple times to put the car in park. Defendant did not comply and instead began screaming at Deputy Riley, Fuck you, I'm not going to do what you want me to do. At this point, Deputy Riley then puts his hand inside defendant's vehicle so that he can place the car in park. Defendant then grabs Deputy Riley's hands and pulls aggressively down, trying to prevent Deputy Riley from putting the car in park. The two begin to struggle. At this point is when defendant hits Deputy Riley in the head and chest area with a closed fist about three to five times. So he had already broken the window at this point? He broke the window after... So he stuck his hand in, they continued to struggle. Defendant, after he grabbed, I think no, it was before he grabbed, Deputy Riley broke the window because defendant would not put the car in park. So he broke the window and put both of his hands inside trying to put the car in park. And that is when defendant grabbed his hand. So he had one hand inside, it was down enough that he could put his arm in and grab the... Correct. Gear shift. Correct. After, to continue to struggle at this point, Officer Beike sees what's happening and runs to defendant's driver's side where defendant pushes open his door and now the three men are on the outside of the car struggling. As the three men struggle, Deputy Riley and defendant are exchanging blows and Officer Beike testified that there was an exchange of fists between the two. After this they struggle and Deputy Riley then falls down and lands on his back face up. At this point the video shows that defendant is straddling Deputy Riley and punching downward before he then flees the scene. The people were required to prove that defendant made knowing contact, that the contact was of an insulting and provoking nature and that defendant knew James Riley was in fact a police officer when he made that contact. Here there's no question that defendant acted knowingly when he made the contact. Both the circumstances surrounding the contact and the contact itself establish defendant's guilt. Intent can be inferred from the circumstances surrounding and aggressive behaviors immediately prior to the battery which is exactly what happened here. Both officers testified to the fact that defendant was angry, he was agitated, he was uncooperative and he was cussing at both officers at some point and he remained uncooperative throughout. He would not put the car in park. He grabbed Deputy Riley's hands and pulled them down in an effort to keep Deputy Riley from putting the car in park. He acted knowingly when he struck Deputy Riley with his closed fist. That's the act itself. He hit him with a closed fist three to five times in the head and chest area. Insulting or provoking is not exactly defined, but the courts have found that it encompasses a wide range of behaviors such as even de minimis contact which can be insulting or provoking if the context requires it or shows that. Here that's what this context shows that. Defendant, again, he was agitated, angry, cussing at the officers, trying to physically prevent Deputy Riley from putting the car in park. Defendant testified that he was actively resisting and that he was in fact trying to get away from the officers. Defendant contends that because there was no threat that there was no insulting or provoking contact, but that's not the standard anywhere as outlined in case law or statute. It doesn't have to be a threat for it to be insulting or provoking. In this case, defendant knowingly made contact with Deputy Riley of an insulting or provoking nature. The people were also required to prove that defendant knew Deputy Riley was a peace officer engaged in his official duties. Now Deputy Riley arrived on the scene in a marked patrol car wearing his full police uniform. Defendant testified that he did not know that he was a cop. However, the trial judge found that that testimony was less than credible and it was in fact the consistencies in Deputy Riley's testimony that made the difference. Let's talk a little bit about that because he says the speech is slurred and the video and the other officer's testimony says no, it wasn't slurred. Then says, well, you know, I thought maybe this was a stolen vehicle because the steering column and the radio, there were wires dangling, but none of that is corroborated. As a matter of fact, the video shows that it's not in that condition. So I guess then when we have the, you know, it's obscured what is actually happening between the officer, but the window appears to be down enough for conversation because the officer's able to get his arm in there, which that, I mean, I know you rely on the Phillips case. Is your analogy because entering a holding cell is, you can say that's like having the right to put that car in park? I mean, I don't understand. I mean, the car wasn't moving. He wasn't moving. What action then would provoke not just reaching in, but then breaking this window? Well, in regards to the wires and the stereo situation, the trial judge actually commented that defendant's attempt to sort of bring those up as issues was red herring. And regarding the why he was putting his hand in there to put the car in park, I mean, at this point, Deputy Riley could hear the engine roaring while defendant was grabbing him, fearing that he may be drugged down the street. He was trying to get his hand in there to just put the car in park. But if he hadn't put his hand in, I mean, if they could conduct the stop and the conversation without him having his hand in there, he wouldn't be drugged down the street if in the event that he did flee. And, you know, that would be a whole different situation. But what I'm asking you is that the demand and then the right of the officer to put his hand in and put the vehicle in park is, you know, you rely on the Phillips case for the right to do that. And is that because, you know, entering a holding cell, is that the same as, you know, I've got the right because I'm a police officer to put this car in park and to get into your vehicle and to do that? I mean, Deputy Riley was making reasonable demands of defendant to put the car in park just for officer safety reasons and for the safety of defendant for that matter. I mean, if he's got his foot on the gas pedal or the brake pedal, I mean, it's common for your foot to slip. I mean, anything can happen, especially when they're struggling. And the fact that defendant won't put the car in park just creates... But he obviously didn't do that for the other officer who had already gone back and was processing his information. So, you know, is there a policy or is there some right other than the officer Riley or Deputy Riley commanded him to do it and he didn't comply? I mean, I'm just saying, what is the basis of your saying that because he didn't comply with that, then he was, you know, that gave him the right then to go and put his hand in there and force this, which is, you know, in fact, the initial touch that began the altercation. I mean, just the officer, the safety concerns would be he was making, you know, it's the people's position that he was making reasonable demand of defendant just to put the car in park. Initially, Deputy Riley and defendant did... Initially, it was get this window down. Get the window down, get the window down, get the window down. But apparently, you know, Belkey or Bakey or whatever his name is, he felt... I mean, he got the information and he was back in the car and then Riley comes and for whatever reason decided the window isn't down far enough. But it's got to be... It's not just cracked unless he's Stretch Armstrong. I mean, it's got to be enough that he's got his arm in there in the first instance and is manipulating his arm. He's got to be able for it to make a bend at some point, too. Yeah, at some point, I'm sure the defendant did let the window down a little bit more. The video actually shows while it doesn't... You can't hear the conversation between Deputy Riley and defendant. You can see that the two men are conversing initially without incident. And Deputy Riley, when he arrives on the scene, Officer Bakey testified that, you know, he did say the defendant won't put the car in park. He's not being cooperative. That's when Deputy Riley goes over and, you know, just simply asked the defendant to put the car in park multiple times. The defendant did not comply. And he just, for officer safety reasons, he wanted the car in park and the defendant would not comply. He reached in there and, you know, Based on all the evidence and viewing the light most favorable to the people, any rational trier of fact could have found that defendant was guilty of aggregated battery beyond reasonable doubt. If there are no further questions, the people would ask that you affirm defendant's conviction. If that's not, thank you very much. Mr. Brannon, Mr. Posadas, do you have any rebuttals? Thank you, Your Honors. Very briefly, if I may. Justice O'Brien, you inquired with counsel for the state as to who broke the window. And briefly, if I may, there's actually disputing accounts, or excuse me, when he broke the window. There's a disputing account as to when that took place. Deputy Riley maintained that he broke the window after initially reaching into the vehicle, which, to your point, shows the window was down far enough for him to reach into the vehicle, put it in the park, and then bring his other arm out, use the flashlight to break the window. Mr. O'Neill says that when Riley approached, he repeatedly instructed him, put the window down further, put the window down further, put the window down further. If you don't put the window down all the way, by the time I count to three, I'm going to break it. And then proceeded to break the window and begin hitting him with the flashlight. Under either scenario, though, it would be our contention that, again, this belies the circumstances, belies Mr. O'Neill's intent to make contact, and that it was Deputy Riley who escalated the situation. Well, let me ask you, do you think that, okay, so we've got a stop here, a traffic stop. Do you think the officer has the right to tell the driver while they're investigating what's going on, especially an agitated driver, but any driver, to please put your car in the park? Certainly an officer has the right to look out for their safety and to issue commands to drivers, and the drivers should be complying with those commands. We're not contending that my client acted completely in compliance with that or even acted in a model way in terms of interacting with this officer. On the other hand, my client is not charged with refusing to obey an officer's command or being stupid. If that were the case, it might be different, but what he's charged with is intentionally making contact with this officer. There's one copy of the record, and the video hasn't made it to me yet, but it will. And so I've heard two different versions of what this video shows with regard to, and I understand you to be telling me that when I look at that video, I will not see your client straddling the police officer and punching him. You will not. You will not see his fist make contact with that officer. Will you see him punching at him? No. What you'll see is that my client is attempting to escape from the officer who has his hands on his red windbreaker jacket, and my client pulls away, and as he's pulling away, as anyone who's ever tried to fling off a sweaty T-shirt, he goes like this once to pull his arm out of the shirt. I think it's one could, I think you'd have to be very, very generous to interpret that as a punch. I think the only reasonable interpretation is that he is pulling his arm all the way. Even on a slightly little opponent, it doesn't have to be necessarily a punch, right? There's no contact that's made, though, and I don't think there's any intent there either. The intent at that point, clearly from Mr. O'Neill's actions, is he's trying to get away. He's trying to disengage or evade, because he then flees the scene immediately. He's not trying to increase the altercation and take on two police officers at the same time. And to that point, the counselor for the state also mentioned that, according to the testimony of Bykey, that my client threw a punch at him as well, which Officer Bykey said connected with him. Again, the video completely belies that, and, in fact, my client was acquitted by the trial court of making contact with Officer Bykey as well. So when he emerges from the vehicle, there's no more punches being thrown. He's simply trying to get away. Now, again, I think, you know, and what I was speaking about earlier is overall, the overall picture of this in terms of looking at intent from circumstances. And that is, did my client show an intent to engage in a physical altercation with these officers? Again, was he being a model citizen? Was he complying perfectly with their demands? No. Was he angry? That's undisputed. He was angry, not necessarily at the officers. He said his own testimony was he was angry and frustrated because he was lost and trying to find out where he was supposed to be going. He wasn't doing anything wrong, in his opinion, and suddenly he got pulled over. And this does bear noting. The state mentions that he was purportedly pulled over for having the illumination on his license plate out. There's no evidence to support that. In fact, Officer Beike activated the lights on his vehicle before he could even see the rear light on my client's car. So I think my client was frustrated, perhaps with good reason, at being stopped. Again, that doesn't excuse making physical contact, but it does explain the circumstances for, you know, why he was upset. And then it was Deputy Riley, excuse me, not Officer Riley, Deputy Riley, who escalated this controlled situation, stable situation, into a physical confrontation. Well, it might have been stable had he put the car in park as asked. But let me ask you this. If the officer is reaching there and he's trying to get that gear shift in the park, by grabbing that officer's arm and pulling it off the gear shift, would that be a contact of insulting or provoking nature? If it were true, well, I'm not sure if it would be contact of an insulting and provoking nature, nor would I agree that my client did, in fact, grab the officer's hand and try to pull it off the gear shift when he reached in. I don't think that that would necessarily amount to contact of an insulting and provoking nature, because, again, especially in a situation where the officer just reaches in without warning like that, there's a great deal of surprise and not necessarily time to form an intent to make contact of that nature with the officer. Again, I don't think you could, I think you'd be hard-pressed to find, it's not in the record anywhere, but you'd be hard-pressed to find a police procedural manual or any type of police instructions that would indicate it's a good idea for a police officer to stick his hand into a vehicle without warning. Well, let me tell you, just anecdotally, I've been down different life paths. Most policemen have been in that situation. I have. I think there are definitely ways to deal with a motorist who is not cooperating. And, again, like I said, my client was not being the most cooperative person in the world. But the question is not whether or not he's being cooperative, it's whether or not he knowingly made contact of an insulting or provoking nature with this officer. It's our contention that the State failed to provide sufficient evidence to prove that. We would ask this Court to reverse Mr. O'Neill's conviction. Thank you. Thank you, Mr. Narang. Ms. Niasse, thank you all for joining me today. We're looking at this matter under the bypass. We thank you for the written disposition. We've been assured of that. And now, Ms. Heston, take us to the next one. Yes. Come on. Ladies and gentlemen, please rise. Court is adjourned.